## SUPREME COURT.

Schoonmaker agt. The Minister, Elders &c. of the Reformed Protestant Dutch Church of the Town of Kingston.

An application to dissolve an injunction made upon the pleadings—the answer being *verified*—must be regarded as an application made upon *affidavits* within the meaning of section 226 of the Code. Therefore affidavits may be read in opposition to the motion. (*See Krom agt. Hogan*, 4 *How. Pr. R.*, 225.)

Where the defendants, a Church Corporation, by their charter (in 1719) had confirmed to them their church lot and *burying ground*, which had been previously, and while they were unincorporated, granted to them by the trustees of the freeholders and commonalty or the corporation of K.; that they had ever since been seized in fee of the lot, and had held the sole possession, occupancy and control thereof; that no burials had ever been made there without their consent and permission. And the plaintiff alleged that the burying ground had been used by the inhabitants of K. as such, from the first settlement of the town until the year 1832, when from prudential motives the authorities of K. prohibited it from being further used for that purpose; that a portion of the ground had been thus occupied by the plaintiff's family, and a great number of her relatives had been buried there, &c.; that the defendants, had resolved to erect a new church edifice thereon, in doing which it was alleged, would cover, build over, or disturb the graves of the plaintiff's relatives, &c.; and insisted that the burying ground had been dedicated and appropriated to the public use, as such, that the defendants had no right or authority to divert it to any other use. *Held*, that the most that could be claimed by the privilege or license thus gratuitously conferred, would be, that the graves of the plaintiff's dead should remain undisturbed so long as the ground should continue to be devoted to the purposes of sepulture. An absolute right to a perpetual occupation of the land could only be acquired by grant. (Upon this point the Justice refers for illustration to an ancient and undoubted authority—*Genesis, ch. 23—where Abraham rejected the gratuitous offer of the children of Heth to bury his dead in their lands, and insisted upon an absolute conveyance on payment of full consideration " of the field of Ephron and the cave therein, and all the trees that were in the field, and in all the borders that were round about to be made sure to him for a possession of a burying place.*

34

Schoonmaker agt. The Ref. Prot. Dutch Church of the town of Kingston.

A dedication to public or pious uses, depends upon the intention of the original owner. Long usage, with the continued acquiescence of the original owner, is usually sufficient evidence of such dedication. But where there are circumstances which rebut the presumption of an *intention* to dedicate arising from long usage, there is, in fact no dedication.

*At Chambers, November* 1850. This was a motion to dissolve a temporary injunction granted by a judge at chambers, re straining the defendants from erecting any church edifice or other building upon the old burying ground situate in the village of Kingston, or digging up or removing any earth therein, or therefrom, or doing any other act or thing, so as in any way or manner to interfere with the graves, or grave stones, erected at the graves of the ancestors, brother, husband and children of the plaintiff, or enclosing or covering such graves by, or with any structures or erections whatever, and from diverting the grave yard to building purposes, or to any other purpose than as a place of repose for the dead.

The plaintiff alleges, in her complaint, that the ground in question had been used by the inhabitants of Kingston for a burying ground from the first settlement of the town until the year 1832, when from prudential motives, the directors of the village corporation prohibited further burials there; that the families of the older residents of the town had in the ground, their particular localities for the burial of their dead; that a portion of the ground has been occupied by the plaintiff's family for that purpose, and a great number of her relatives have been buried there, and suitable grave stones have been erected and maintained at their graves; some of them by and at the expense of the plaintiff herself; that the defendants have resolved to proceed forthwith to erect a large stone edifice upon the burying ground, and in doing so, will cover, build over, or disturb the graves of the plaintiff's relatives, and, in digging for and preparing the foundation of the church, they must, of necessity, disturb the ashes and violate the graves of these relatives, and remove the monuments which mark their localities. The plaintiff insists that the lot has been dedicated and appropriated to the public use as a burying ground,

and that the defendants have no right or authority to divert it to any other use.

The defendants state that they were incorporated in 1719, and by their charter they had confirmed to them the title to their church lot and burying ground, which had been previously, and while they were yet unincorporated, granted to them by the trustees of the freeholders and commonalty of the corporation of Kingston; that they have ever since been seized in fee of the lot and have held the sole possession, occupancy and control thereof; that no burials have ever been made there without the consent and permission of the defendants, and under the direction of their sexton or other officers; that no right of burial, in any particular part of the premises, has ever been granted by the defendants, or acquired by any other person; that from the year 1688 to 1832, the defendants had maintained a church edifice upon the ground in question; that in 1832 they erected a new house on the opposite side of the street, which they have since occupied, but that now they are desirous of erecting a new and larger house upon or near the site of their old church edifice, and have commenced making arrangements for that purpose. The defendants further state, that in making their arrangements and settling their plans they have had express reference to the present condition of the ground and its former use, and with a view to leave the remains of the buried dead undisturbed, have determined to build no basement to their edifice; to preserve all the grave stones and other memorials designating the graves, and either lay them within the edifice or remove them to some other portion of the ground at their own expense, as the surviving friends may desire; and generally, to remove and disturb no remains whatever, except at the request of relatives and friends.

Some other facts are stated both in the complaint and in the answer; but this statement is sufficient to present the question involved in the motion.

M. SCHOONMAKER, *for Plaintiff.*

J. C. FORSYTH and J. K. PORTER, *for Defendants.*

HARRIS, Justice.—A question was made upon the hearing of this motion as to the right of the plaintiff to read affidavits in opposition to the motion. The defendants have put in their answer and have verified it by affidavit in the manner required by the 157th section of the Code. Upon this answer they found their motion to dissolve the injunction. The plaintiff insists that the motion is, within the meaning of the 226th section of the Code, " an application upon affidavit," which entitles him to " oppose the same by affidavits or other proofs." The defendants, on the other hand, insist that their affidavit verifying their answer is but a necessary part of their pleading, and that the motion to vacate the injunction upon the complaint and answer does not entitle the plaintiff to support the injunction by further affidavits. The former practice of moving to dissolve an injunction upon bill and answer is in favor of this construction; but although the provision of the Code is, in this respect, not very clearly expressed, I do not see how effect is to be given to it without allowing the construction for which the plaintiff contends. The 225th section provides, that the application to vacate an injunction may be made either upon the papers upon which the injunction was granted, or, " upon affidavits, with or without an answer." The defendants' application clearly belongs to the latter class, for they rely upon their verified answer, as well as the plaintiff's papers. It must, therefore, be regarded as an application " made upon affidavits," within the meaning of the 226th section of the Code. I think, therefore, that the opposing affidavits are properly to be considered in deciding the motion (Krom vs. Hogan, 4 How. Pr. R. 225).

Upon the merits I am satisfied that the injunction ought not to be continued. The defendants have, beyond a doubt, the legal title to the ground in question. If the plaintiff has any right there, it is because the ground has been devoted by the defendants to the purposes of a cemetery and by their permission the plaintiff has occupied it as a burial place. The most that this privilege, thus gratuitously conferred, can involve is, that the graves of the plaintiff's dead shall remain undisturbed so long as the ground

should continue to be devoted to the purpose of sepulture. An absolute right to a perpetual occupation of the land could only be acquired by grant. So Abraham thought 3700 years ago, when he declined the courteous offer of the children of Heth, to permit him to bury his dead in their lands. He insisted upon an absolute conveyance of the spot he had selected, and paid for it a full consideration. It was probably the only land he ever owned. At any rate it is the earliest instance of a recorded title to land (*Genesis* 23). He was himself a wanderer, but the sentiments of his religion, and the affection for his beloved dead, alike, prompted him to secure a place where their mortal remains might repose, undisturbed, until they should again be reanimated at the resurrection. Hence it was, that he rejected the license, so generously tendered to him, to bury his wife "in the choice of their sepulchres" and required the field of Ephron, and the cave therein and all the trees that were in the field, and in all the borders that were round about, to be made sure to him, for a possession, of a burying place."

The plaintiff supposes that the general and uninterrupted use of the ground, as a place of sepulture, with the consent or acquiescence of the defendants, amounts to a perpetual and irrevocable dedication to the uses for which it has been appropriated. But in this view I am unable to concur. There is no doubt that land may be, and often is, even without deed, dedicated by the owner to public or pious uses. When the public have entered upon the use of land so dedicated, so that to allow it to be reclaimed would be unjust, the dedication becomes irrevocable. Thus, plots of land have often been set apart by the owners, as places for burial, and having been used for that purpose, with the owners' assent, they become hallowed by that use and can not be reclaimed by the owner. Beatty vs. Kurtz, (5 *Peters*, 566), was such a case. There Beatty, in laying out a town, which subsequently became a part of the city of Georgetown, designated and set apart one lot "for the German Lutheran Church." That people consisted of a voluntary, unincorporated society, but they entered into the use of the lot, and for more than fifty years, had occupied it as a

cemetery. It appeared that Beatty had, during his life time, constantly avowed that the lot was appropriated for the Lutherans, and that they were entitled to it. Under these circumstances, it was held that, as the lot had been originally consecrated to a religious use, and as it had become a depository of the dead, it could not be resumed by the heirs of Beatty. In like manner, public squares and streets have sometimes been laid out by the owner of the land, and when land bounded on these, has been sold and improved, with the understanding that the owner of the land, thus laid out, has permanently devoted it to public use, the dedication, from that moment, becomes perfect and irrevocable. Whether or not there has been such a dedication, depends upon the intention of the original owner. Long usage, with the continued acquiescence of the original owner, is usually sufficient evidence of such dedication. But where there are circumstances which rebut the presumption of an intention to dedicate arising from long usage, there is, in fact, no dedication, or at least no evidence of such dedication.

This is clearly so in the case before me. I am entirely satisfied from the facts presented, that the defendants never, for a moment, intended to surrender the ownership or control of the ground. On the contrary, they seem always to have exercised over it all the dominion consistent with the purposes for which it was originally granted. No person ever had a right to bury there, without the defendants' permission. Because that permission has been generally granted and perhaps generally taken, for granted, without actual application, the defendants have none the less right, when they choose to control the use of the ground. When the plaintiff's kindred and friends were deposited there, whether the privilege was actually granted, or is to be inferred from the defendants' sufferance, no right was secured in the land. In either case, it was but a license, and this never secures an interest in the land (3 *Kent*, 452). The most that this license implies is, that the body, when deposited in the grave, may remain unmolested until it decays. The inviolability of the last resting place of the dead has been a sentiment deeply cherished in all ages. It is the last

wish of affection, when it renders back to the earth the body of one dear in life, *ut requiescat in pace, usque ad resurrectionem.* So universal is this feeling, that a wanton disturbance of the grave would, among any civilized people, be regarded as an offence to the living, as well as an indignity to the dead; and yet no positive rule of law forbids such disturbance. The suggestion of self respect and " a decent regard for the opinions of mankind," will always be sufficient to secure the place of sepulture from unnecessary molestation. The legal doctrine is, that " the common cemetery is not *res unius ætatis :* the exclusive property of one generation now departed, but it is the common property of the living, and of generations yet unborn, and subject only to the temporary appropriation (Gilbert vs. Buzzard, 3 *Phillimore,* 335).

In the most enlarged construction that can be given to the plaintiff's legal rights, those rights must be considered as satisfied. The feelings, which still prompt her to guard the soil with which the remains of her kindred have long since mingled, are natural and commendable. It is very manifest, from the facts before me, that the defendants have sedulously sought to guard against any unnecessary violation of those feelings. They seek to appropriate the land to the beneficial uses of the living. This it is their right, if not their duty to do. However painful it may be to the plaintiff to see the memorials which affection has erected in memory of her kindred removed, she has no legal right longer to divert the land to the barren preservation of those memorials. The injunction must therefore be vacated.