NATOMA WATER AND MINING CO. v. CLARKIN.

*Sixth District Court for Sacramento Co., April T.,* 1858.

INJUNCTION — MOTION TO DISSOLVE — BILL AND ANSWER — AFFDAV-
ITS — WASTE — IRREPARABLE INJURY.

On a motion to dissolve an injunction, where defendant moves upon bill and answer alone, plaintiff will not be allowed to introduce affidavits to sustain his bill, or contradict the answer.

On such a motion, so made, the reading affidavits to contradict the answer was always addressed to the discretion of the court.

Although perhaps, affidavits might sometimes be read to support the simple allegation of waste, yet in no case can they be read to support the plaintiff's equity.

The defendant's verified answer is not an affidavit, within the meaning of the *code,* which will authorize the admission of counter affidavits.

Affidavits, being taken *ex parte,* and only disclosing so much of the truth as suits the purposes of the party producing them — courts should, whenever discretion is left them, exercise it towards the exclusion of the affidavits.

The issuance of a writ of injunction in restraint of waste, proceeds upon the assumption that the injury complained of, is in its character *irreparable.*

In England, this irreparable injury is regarded as extending to the injury or destruction of timber, because the inheritance is expected to descend to posterity unimpaired, and the timber is regarded as possessing a peculiar value from family association or other similar reasons, to the owner or inheritor, which cannot be pecuniarily estimated.

In this country, this doctrine does not extend to cases of the removal of earth, cobble stones, gravel, &c., or injury to wood or timber, unless they present some strong and peculiar circumstances.— *Contra, Hensley* v. *Tarpey,* 1 *Cal., Dist. C.,* 120.

This was a bill in equity filed by an association organized for mining purposes, to obtain a perpetual injunction restraining defendants from

digging and removing certain gravel, earth, cobble stones, &c.—from destroying or injuring timber, and to recover damages for the injury already done. A temporary injunction was allowed. On motion to dissolve the same. The necessary facts are stated in the opinion.

BOTTS, J.—The complaint alleges that the plaintiff is the owner, in fee simple, of certain premises, upon which the defendants have entered, and that they are still holding adversely to the plaintiff. It is also said that the defendants have been for several years cutting wood and growing timber, upon said land, and that they threaten to continue ; and it is further alleged that the defendant, *Anderson*, has removed large quantities of cobble stone and earth, and threatens to remove other gravel, cobble stone and earth. The plaintiff prays judgment for the possession of the premises, and that the defendants may be enjoined from cutting, carrying away, or destroying wood, timber, cobble stones and gravel, from the premises.

The injunction issued in pursuance of the prayer of the bill, and now, upon the coming in of the answer, the defendants move for a dissolution. The answer denies the facts alleged in support of the allegation of title in the plaintiff. The plaintiff offers to sustain his title by affidavits, and the first question to be determined is, are these affidavits admissible ? In investigating this much mooted subject, it may not be altogether irrelevant to consider the nature and character of the mode of evidence by which the plaintiff seeks to sustain his allegation of title. It is an importation from the civil practice, and is totally repugnant to the theory of the common law. Affidavits are taken *ex parte*, without the purifying process of cross-examination. Every practitioner who is familiar with the two methods, is aware that the one developes one-half, and the other the whole truth. The party who puts a witness upon the stand is prohibited from shaping his questions in a leading form, whilst he generally draws the affidavit himself, disclosing as much of the truth as suits his own purposes, couching the statements in his own phraseology, and getting his honest, but careless friend to swear to it. Nothing can be more unsatisfactory than this kind of proof, and whenever a discretion is left in me, I am inclined to reject it.

Unquestionably the old doctrine was this: the injunction is granted upon the *ex parte* showing of the plaintiff; if that showing be refuted by the answer of the defendant, then is the presumption in favor of the plaintiff overthrown, and the injunction must be dissolved. So far was this rule carried by lord *Eldon*, that although the grand jury had found a true bill against the defendant for perjury in verifying the answer, the chancellor still held, that the answer, having met the plaintiff's allegations, there was no longer any presumption to sustain the injunction. See *Clapham* v. *White*, 8 *Vesey*. Mr. *Waterman*, in his notes to *Eden*, reviews the cases, and is clearly opposed to the reading of affidavits, even where the allegations of the bill are admitted, and the defense rests upon new matter set up in the answer. See 1 *Waterman's Eden*, 138. The first case to which I am cited by the plaintiff is that of *Poor* v. *Carlton*, 3 *Sumner*. In this case judge *Story* labors for the position he assumes, but all he contends for, is, that in special injunctions, (in America there is no distinction between general and special injunctions,) affidavits may be read in support of the allegations of the bill, at *the discretion of the court*. The reading affidavits to contradict the answer, is certainly, to say the least of it, the exception to the general rule, and is always addressed to the discretion of the court. I should certainly be loth to make the trial of the complex and difficult question to so excellent a rule ; and indeed, Mr. *Dickens*, who is cited by the plaintiff, says that, although affidavits may be read to support the simple allegation of waste, in no case can they be read to support the plaintiff's equity. This distinction is too obviously sensible to require the aid of argument.

I am next referred to the construction, in *New York*, of a statute similar to our own. The first question that was raised in *New York* was this : Did an answer, verified in the form originally prescribed by the code, viz : upon information and belief, merely, overthrow the positive allegations of a bill and entitle the defendant to a dissolution ? The courts held that there was nothing in the *code* that altered the old chancery rule ; and that, inasmuch as such an answer would have been insufficient under the old system, so it would be under the new. No injunction should be granted upon a complaint thus verified, and

no motion could be sustained upon such an answer. Such is the purport of the decision in *Roome* v. *Webb,* 3 *How. Pr.* The *code* was afterwards so amended as to require the old chancery jurat, as does the *California code.* Upon such a jurat, a new question arose. The *New York* statute, as does our own, provides that if the defendant moves to dissolve the injunction upon answer alone, no opposing affidavits shall be read; but if upon affidavit, then such affidavit may be rebutted by counter affidavit. Now, it was charged that when the defendant moved upon an answer, verified in the new form, he moved, virtually, upon an affidavit, and thus opened the way to counter affidavits; and this reasoning, very sophistical, as it seems to me, was upheld by judge *Harris,* for whose opinions, in general, I have great respect, in *Schoonmaker* v. *Reformed Pro. Dutch Church,* 5 *How. Pr.,* 265. But it does seem to me that our statute is conclusive; it requires the answer to be made out in a particular manner; on motion, upon such an answer, no affidavits upon the part of the plaintiff shall be read. To call such a verification an affidavit, is to confound all distinction between an answer and an affidavit; or rather, it is to construe every answer to be an affidavit; this is to ignore a distinction upon which the provision of the statute is based. Affidavits in rebuttal of the answer, says the statute, can only be read in those cases where the defendant relies upon affidavits in addition to his answer. Affidavits, says the construction, may be read on the part of the plaintiff, whenever the motion is based upon an answer verified in the manner prescribed in the statute — that is, upon answer alone. Such a construction is, it appears to me, based upon reasoning the most erroneous, and contradicts the clear meaning and intention of the statute. So it is held in *Servop* v. *Stannard,* 2 *Code.* Judge *Edwards* says: " The word *affidavit,* can hardly be construed to mean *answer.* We find the words answer and affidavit throughout the *code* applied to different objects, and, certainly, in their ordinary acceptation, they are not synonymous." In *Merced Mining Co.* v. *Fremont* (7 *Cal.,* April T.,) the court say: " But it seems to be the general rule in England, that if the answer deny the exclusive right of the plaintiff, then the injunction will be dissolved. This is based upon the

practice of not permitting affidavits to be read to contradict the answer, *as to the question of title.*"

It is true that, in this case the question did not arise, and that after fully discussing it on both sides, the court disclaims any intention of expressing an opinion upon the subject. This, at least declares the question of affidavits unsettled even under our statute, and leaves me untrammeled to decide it according to my best judgment.

Upon these grounds alone, I should hold, the answer denying that which constituted the equity of the bill, the injunction must be dissolved.

But I was never fully satisfied with the order granting the injunction. That order was made upon the faith of the decision in *Merced Mining Co.* v. *Fremont,* and as that decision is in direct opposition to the opinion in *Gates* v. *Teague,* which last case is cited in the former only to be approved, I feel at liberty to discuss the relative merits of the two decisions.

The writ of injunction has been called the right arm of a court of equity. It is an efficient, but it is also an arbitrary and despotic power; it may be wielded for good or for evil; it disposes of human rights and human liberty, without the intervention of a jury, and is totally opposed to the spirit of the common law. Indeed, the whole judicial power of the chancellor was, and is, based upon the assumption that there are wrongs for which the common law courts afford no redress; no man shall be deprived of his right to a trial by jury where that form of procedure is calculated to determine the right and furnish the remedy. It is only where the common law is deficient that equity steps in to fill the gap. This was, and is, the modest pretension of a court of chancery; but, under this garb of unpretending simplicity, this tribunal has concealed the most daring ambition, and by one pretense and another has invaded the province of the common law courts. After a severe struggle, the power of a despotic prince being thrown into the scale, the chancellor of England secured to himself the power of arresting and controlling the judgments of the common law courts. The next step was to enjoin the commission of waste, on the ground that, although the remainder man, or reversioner, had a remedy at law, that remedy was expensive and tedious. At length, lord *Thur-*

*low*, forgetting that the basis of this claim was the expense and circuity of the peculiar remedy prescribed to a reversioner, held that it was equally applicable to the case of an ordinary trespasser, against whom the common law remedy was clear, specific and as speedy as any other known to the old English system. Lord *Thurlow* was a bold man, and was content to say that the two cases stood upon the same footing, and that it made no difference whether the injury was committed by a privy or a stranger. Subsequent chancellors declared that injuries in the nature of waste might be enjoined, because in their character they were irreparable, and such as could not be compensated for in damages. Such an injury is the destruction of an English oak, which has shaded an ancestry for centuries, and which has a peculiar value to the owner that cannot be estimated in dollars and cents. This is an irreparable injury. Hence the doctrine, destruction of timber, injury to the inheritance, (in England most estates are expected to descend unimpaired to posterity,) are the proper subjects of injunction. And it is upon the basis of feeling and affection that a soulless corporation, in this commercial and mercenary age, when every thing is the subject of barter and sale, alleges, that no amount of money can compensate her for the timber, cobble stones and gravel that the defendants are threatening to remove. It does seem to me that this is the *reductio ad absurdum* of a theory, in its origin and purity, slightly tinged with romance and poetry. Those authorities that justify an injunction in trespass, admit that it is not a mere ordinary injury to wood or timber that will warrant the writ; there must be some strong and peculiar circumstances about the case. See *Stevens* v. *Beekman*, 1 *Johns. Ch.*, 318; *Nevitt* v. *Gillespie*, 1 *Howard*; *Kerlin* v. *West*, 3 *Green. Ch.*; *Tolbridge* v. *Freeman*, 2 *Dallas*; *Amelung* v. *Seekump*, 9 *Gill & Johns.*; and in *Gates* v. *Teague*, the court says: "A court of chancery is always chary of granting injunctions in cases of mere trespass.   *   *   * Depriving the complainants of a large amount of gold bearing earth is a loss, but not irremediable in the sense which will entitle them to the relief they seek."

It is true that without expressly overruling this case, although they refer to it, the same court held an opposite doctrine in *Merced Mining*

*Co.* v. *Fremont ;* but I cannot help thinking that the third case will, upon consideration, be made to conform to the first, rather than to the second ; at any rate, I am sure that the doctrine of irreparable injury will never be extended to cobble stone and gravel.

For these and other reasons, the injunction must be dissolved. Let it be so ordered.