In the Matter of the Application of the BOARD OF STREET OPENING, ETC., of the City of New York, to Acquire Lands Known as ST. JOHN'S CEMETERY, for a Public Park.

The fact that lands have previously been devoted to cemetery purposes does not place them beyond the reach of the power of eminent domain, and in the absence of an express statutory prohibition land devoted to a private cemetery, owned by private individuals or a private corporation, may be condemned under a statute authorizing generally the condemnation of land for a public use.

Under the provision of the act of 1887 (Chap. 320, Laws of 1887), authorizing the board of street opening and improvement, of the city of New

York, to locate and lay out public parks, said board instituted this pro- ceeding to condemn for park purposes, a cemetery belonging to Trinity Church, a religious corporation. The cemetery was established in 1801: burials therein were only by permits given by the corporation. It was used until 1839, when an ordinance was passed, forbidding interments in that part of the city. No interments were made in the cemetery thereafter, but the church cared for and kept it in order. *Held,* that the land was properly condemned.
Reported below, 62 Hun, 499.

(Argued April 25, 1892; decided May 24, 1892.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, made December 31, 1891, which affirmed an order of Special Term appointing commissioners of estimate and assessment.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*S. P. Nash* for appellants.    Property which is not required for a proposed public use cannot be taken by the power of eminent domain. (*In re Albany St.,* 11 Wend. 148; *Embury* v. *Conner,* 3 N. Y. 511, 516, 517; *In re N. F. Co.,* 108 id. 375; *Hunter* v. *Sandy Hill,* 6 Hill, 407.) Courts of equity will restrain the disturbance of burial places. (*Beatty* v. *Kurtz,* 2 Pet. 566; *Thompson* v. *Hickey,* 8 Abb. [N. C.] 159; *Schroeder* v. *Wanzer,* 36 Hun, 423.) The theory that the power given by the statute of 1887 to the board of street opening and improvement is absolute to condemn "any and all lands, tenements and hereditaments" within the territorial limits stated, "neither cemeteries nor any other lands being excepted," is untenable. (*In re N. Y., L. & W. R. R. Co.,* 99 N. Y. 12; *Cogswell* v. *N. Y. & N. H. R. R. Co.,* 103 id. 10; *B. & P. R. R. Co.* v. *F. B. Church,* 108 U. S. 317; *S. T. Co.* v. *Mayor, etc.,* 128 N. Y. 510.) It is true that there is no express statutory prohibition against the taking of cemeteries under the power of eminent domain, but the general legislation of the state does indicate a plain policy which precludes any idea that it was intended to confer the power upon the board of street openings in the city of New York. (Laws of

1868, chap. 843; Laws of 1847, chap. 133, § 10 ; Laws of 1878, chap. 203, § 34 ; Laws of 1866, chap. 273 ; *In re D. Cemetery*, 66 N. Y. 569.) Land dedicated for a cemetery is appropriated to a public use, and cannot be taken except by express authority or necessary implication. (*Village of Hyde Park* v. *Ceme-tery Assn.*, 119 Ill. 141 ; *Wood* v. *M., etc., R. R. Co.*, 68 Geo. 539 ; *Evergreen Cemetery* v. *New Haven*, 43 Conn. 234.) Unless expressly authorized by law, the disturbance of graves and the removal of human remains is a criminal offense. (1 Russ. on Crimes, 629 ; *Rex* v. *Lynn*, 2 T. R. 733; *Regina* v. *Sharpe*, D. & B. 160 ; *Commonwealth* v. *Cooley*, 10 Pick. 37; 2 R. S. 688, § 13 ; Laws of 1887, chap. 320; *People* v. *Fitz-gerald*, 105 N. Y. 146 ; *Rhodes* v. *Brant*, 21 Hun, 1 ; *Patter-son* v. *Patterson*, 59 N. Y. 574; *Cogswell* v. *N. Y., etc., R. R. Co.*, 103 id. 10.) In this case the board of aldermen has intruded upon the board of street opening the influence of another department of the city government, which vitiates the decision reached, and should invalidate all the proceedings. (*Kavanaugh* v. *City of Brooklyn*, 38 Barb. 232; *Thomas* v. *Shermerhorn*, 6 N. Y. 92, 96 ; *Birdsall* v. *Clark*, 73 id. 73.)

*D. J. Dean* for respondent. The terms of the statute (Chap. 320, Laws of 1887, 394) authorize the condemnation of any lands which the board of street opening and improvement may select and designate for public use as a public park within the city of New York, south of One Hundred and Fifty-fifth street. (*Schoonmaker* v. *R. D. Church*, 5 How. Pr. 269 ; *In re D. C. Assn.*, 66 N. Y. 569 ; *McCluskey* v. *Cromwell*, 11 id. 601; *People* v. *Woodruff*, 32 id. 364; *Johnson* v. *H. R. R. Co.*, 49 id. 262; *Benton* v. *Wickwire*, 54 id. 228; *In re Albany St.*, 11 Wend. 149; *In re Beekman St.*, 4 Brad. 503; Laws of 1847, chap. 133, § 10; Laws of 1868, chap. 43; Laws of 1878, chap. 203, § 34; Laws of 1886, chap 273.) The provisions of the statute are broad enough to authorize the department of public parks to remove human remains from the cemetery when it shall be acquired for park purposes. (*Stief* v. *Hart*, 1 N. Y. 30.) The fact that the

board of aldermen, by resolution, recommended the board of street opening and improvement to locate the park in question, does not constitute any valid objection to the action of the last-named board. (*N. Y. & H. R. R. Co.* v. *Mayor*, *etc.*, 1 Hilt. 588; *In re Wright*, 29 Hun, 360.) Considerations of hardship, or sentimental injury, will not avail to forbid the exercise of the power of eminent domain. (*In re N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 268.)

EARL, Ch. J.   The act, chapter 320 of the Laws of 1887, provides that the board of street opening and improvement of the city of New York "is authorized and empowered to select, locate and lay out such and so many public parks in the city of New York south of One Hundred and Fifty-fifth street as the board may from time to time determine," and it confers upon the board power to acquire for park purposes, by condemnation proceedings under the statute, "any and all lands, tenements and hereditaments which said board shall deem necessary to be surveyed, used or converted for the laying out, surveying and monumenting of any park so selected as aforesaid." The board instituted this proceeding under the act to acquire for park purposes the title to land below One Hundred and Fifty-fifth street, known as St. John's cemetery, which belonged to a religious corporation in the city of New York, commonly called Trinity Church. It was established as a cemetery as early as 1801, and was used for that purpose until 1839, during which time about ten thousand human bodies had been buried therein. In 1839 an ordinance was passed by the city of New York forbidding interments south of Eighty-sixth street, and since that time no interments have been made in the cemetery, but Trinity Church has preserved and kept it in order and prevented any disturbance thereof.

It is contended on behalf of Trinity Church that under the general authority given by the statute of 1887, this land which had been devoted to cemetery purposes could not be taken for a park. The authority conferred upon the board by the act is broad and general. It is authorized to take for

park purposes any land south of One Hundred and Fifty-fifth street. It is undoubtedly true that this general language would not be sufficient to authorize it to take land which had been previously taken for and was then devoted to a public purpose. (*Matter of N. Y., L. & W. R. R. Co.*, 99 N. Y. 12; *Suburban Rapid Transit Co.* v. *Mayor*, etc., 128 id. 510.) But this was not a public cemetery, and, so far as appears in this record, had never been devoted to a public use. The public generally never had any right of burial therein. No burials therein could be made except by permits given by Trinity Church, and all the interments therein had been made by its authority. · The cemetery land was, there-fore, devoted to a private and not to a public use. (*Matter of Deansville Cemetery Assn.*, 66 N. Y. 569.)

The fact that lands have previously been devoted to ceme-tery purposes does not place them beyond the reach of the power of eminent domain. That is an absolute transcendent power belonging to the sovereign which can be exercised for the public welfare whenever the sovereign authority shall determine that a necessity for its exercise exists. By its exist-ence the homes and the dwellings of the living, and the resting-places of the dead may be alike condemned.

It seems always to have been recognized in the laws of this state, that under the general laws streets and high-ways could be laid out through cemeteries, in the absence. of special limitation or prohibition. So it is provided in section 10 of chapter 133 of the Laws of 1847, entitled "An act authorizing the incorporation of rural cemetery associa-tions," that "no street, road, avenue or thoroughfare shall be laid through such cemetery, or any part of the lands held by such association for the purposes aforesaid, without the consent of the trustees of such association, except by special permission of the legislature of the state." The act, chapter 273 of the Laws of 1886, authorizing the incorporation of associations to erect monuments to perpetuate the memory of soldiers who fell in defense of the Union, contains a similar provision. The act chapter 843 of the Laws of 1868 provides that no private

or public road shall be laid out or constructed upon or through any graveyard or burying ground in this state, unless the remains therein contained are first carefully removed and properly reinterred in some other burying ground at the expense of the persons desiring such road. The act chapter 203 of the Laws of 1879 provides for the incorporation of pipe-line companies, and empowers them to take land by condemnation proceedings, and in section 34 it is provided that "no company formed under the provisions of this act shall locate or construct any line of pipe or pipe-line through or under any building, door-yard, lawn, garden or orchard, except by the consent of the owner thereof in writing, duly acknowledged before some officer authorized to take acknowledgments of deeds, and no pipe-line shall be constructed through any cemetery or burial ground." It is the necessary implication that but for the express prohibitions contained in these statutes, under the general provisions of law authorizing the construction of streets, highways and pipe-lines, cemetery lands would not be exempt from invasion.

We have not overlooked the cases in which the general language of statutes has been limited and curtailed of its literal import so as not to give the statutes effect beyond the intent of the law makers. But here we can find no sure ground for curtailing the scope of the statute which we have to construe. We certainly cannot be sure that the law makers if they had known of this cemetery, disused for burials for fifty years and never more to be used for that purpose, located in the midst of a dense and teeming population, would have preferred that it should remain appropriated for the resting place of the long since dead, rather that it should be devoted to use for the comfort, welfare and health of the living. We cannot say that the taking of such a cemetery for such a use is such an unreasonable, unnatural, impolitic or unjust thing that we ought to hold that the general language of the statute does not authorize it to be done.

We have examined the authorities, to which our attention has been called by the learned counsel for Trinity Church, and

none of them in the least degree sustain the contention that lands devoted to private cemeteries owned by private individuals or a private corporation, cannot be condemned under the general language authorizing their condemnation for public use. On the contrary the following authorities give strong sanction to the claim that such lands can be taken under general legislative authority for a public use unless specially · protected by statute : ( *Wood* v. *Macon & Brunswick R. R. Co.*; 68 Ga. 539 ; *In re Opening of Twenty-second St.*, 102 Penn. 108; *Egypt St.*, 2 Grant's Cases, 455 ; 4 Brad. Sur. .503 ; *Schoonmaker* v. *Reformed Dutch Church*, 5 How. Pr. 269 ; *In the Matter of Albany St.*, 11 Wend. 148; *Windt* v. *German Reformed Church*, 4 Sand. Ch. 471.)

· What are the limits of the doctrine contended for on behalf of Trinity church ? If a cemetery has for a century been disused as a place of burial can it not, if the welfare of the public require it, be taken for public use ? Countless millions of the human race have been interred in the earth, and must their remains be inviolably left where they are found so long as they can be distinguished from the earth which contains them ? There is no law which prohibits the removal of human remains from a cemetery for lawful purpose and placing them elsewhere. On the contrary the law regulates their removal in certain cases. (Laws of 1878, chap. 349 ; Laws of 1847, chap. 133, § 11, as amended by chap. 566 of the Laws of 1880.)⌐ The remains of the dead in this cemetery can be removed without violating any law, and certainly without violating the law (Penal Code, § 311) against body stealing.

Trinity Church having giving permits for burials in this cemetery without granting any interest in the.lots in which the burials are made, could at any time remove the remains of the dead and place them in a suitable manner in some other cemetery. No one has acquired any right from it that their remains shall forever remain there. It could not remove them and leave them exposed in the street or elsewhere. Such an act would shock public sentiment, and could ·probably be restrained by action in the name of surviving relatives. But

that it could decently remove them and place them in some other proper place cannot be doubted. As said by the learned vice-chancellor in *Windt* v. *German Reformed Church* (*supra*), " the only protection offered to the remains of the dead interred in a cemetery of this description is by the public laws prohibiting their removal, except on the prescribed terms, and in a still stronger public opinion. Probably these furnish all the protection which is consistent with the exigencies of a large city, the population of which increases with marvelous rapidity, and whose wants leave but little room for the remains of the dead in the dense and crowed haunts and thoroughfares of the living." By this proceeding the city of New York will acquire all the title of Trinity Church, and it will thus be clothed as owner of the land with all the rights Trinity Church had, and thus it will and must find some way to dispose of the remains in a manner that will not shock the refined sensibilities or the pious sentiments of the living. It is not needful, however, to determine now what the precise duties and obligations of the city will be in reference to these remains. It is enough now to determine that there is no obstacle in the way of the condemnation of the title to the fee of the land in this cemetery.

The order should, therefore, be affirmed, with costs.

All concur.

Order affirmed.