LANTRY, Fire Com'r, v. MEDE.

(Supreme Court, Appellate Term. March 5, 1908.)

HEALTH—UNSAFE BUILDINGS—"OTHER THING."

Greater New York Charter, Laws 1901, p. 323, c. 466, § 780, authorizes the marshal to enter any building to examine "the stoves and pipes thereto, ranges, furnaces and heating apparatus of every kind whatsoever, including the chimneys, flues and pipes with which the same may be connected, engine rooms, boilers, ovens, kettles, and also all chemical apparatus or other things which in his opinion may be dangerous in causing or promoting fires." *Held*, that the "other things" are not limited to the classes previously specified, and that a dumb-waiter shaft, extending from the basement to the roof, but without connection with the outer air at the roof, may be condemned as dangerous, and specific changes ordered therein.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, p. 5101.]

MacLean, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by Francis J. Lantry, fire commissioner of the city of New York against Albert Mede. Judgment for defendant, and plaintiff appeals. Reversed.

Argued before GILDERSLEEVE, P. J., and BISCHOFF and MacLEAN, JJ.

Francis K. Pendleton (Herman Stiefel and William J. Millard, of counsel), for appellant.

Ira J. Ettinger, for respondent.

BISCHOFF, J.   As I construe the statute under consideration (Charter, Laws 1901, p. 323, c. 466, § 780), the discretion vested in the official was not limited to matters of the very classes previously specified.   The rule "noscitur a sociis" does not have cogent application here, since the word "other" is used in connection with things which in "the opinion" of the official were dangerous.   It cannot be said that the Legislature, when specifying certain things, enacted into law the fact that a marshal deemed these very things dangerous, and yet, without some such assumption, the statute cannot be taken to restrict the "other" things— left to his opinion as to their dangerous character—to the specified matters of probable danger.   The commissioner is given discretionary powers in the matter of proceeding upon the marshal's report, and the apparent purpose of the statute is to leave much to his personal opinion relative to the manner in which things of danger should be treated, whether by removal or by remedying their defects, for the lessening of the cause of fires, or for the protection of firemen and the occupants of buildings in case of fires.

Taking this section of the charter as a whole, the purpose is plain, and the meaning of the words "or other things which in his opinion may be dangerous in causing or promoting fires" is not confined to any exact class of dangerous appurtenances.   "Ex antecedentibus et consequentibus fit optima interpretatio."   Looking to the provisions of this section of the charter which precede and follow the words in question, I have no doubt that the statute should be interpreted to include the matter to which the commissioner's order was directed in the present case.   Sutherland, Stat. Const. § 279; Given v. Hilton, 95 U. S. 591, 598, 24 L. Ed. 458; White v. U. S., 191 U. S. 552, 24 Sup. Ct. 171, 48 L. Ed. 295; Wolsey v. Chapman, 101 U. S. 769, 25 L. Ed. 915; Matter of Board of Street Opening, 133 N. Y. 329, 31 N. E. 102, 16 L. R. A. 180, 28 Am. St. Rep. 640.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs.

MacLEAN, J. (dissenting).   Having disobeyed the order of the fire commissioner to cover with asbestos plated with metal a dumb-waiter shaft running from the basement to the roof, but without any connection with the outer air above the roof, the owner of the building was made defendant in an action for a fine of $50 under section 780 of the Greater New York charter (Laws 1901, p. 323, c. 466), which reads:

"It shall be the duty of a marshal or his officers and agents, when authorized by him in writing so to do, to enter into any building or premises within said city for the purpose of examining or causing to be examined, the stoves and pipes thereto, ranges, furnaces and heating apparatus of every kind whatsoever, including the chimneys, flues and pipes with which the same may be connected, engine rooms, boilers, ovens, kettles, and also all chemical apparatus or other things which in his opinion may be dangerous in causing or promoting fires, or dangerous to the firemen or occupants in case of fire, and upon finding any of them defective or dangerous, or in any manner exposed or liable to fire from any cause, he shall report the same to the commissioner, who may thereupon issue orders or special directions, either print-

ed or written, directing the owner or occupant to alter, remove, or remedy the same in such manner and within such reasonable time as may be necessary, and in respect thereto may authorize and direct the use of such materials and appliances as shall be deemed proper and necessary; and in case of neglect or refusal so to do within the time prescribed by such orders or directions, such fire marshal, under the direction of said commissioner, shall cause said alteration, removal or other necessary act or work to be done, and the expense thereof shall be charged to the party so offending, to be sued for and recovered in the manner herein provided for the recovery of fines and penalties under this chapter. And in addition thereto the party so offending shall forfeit the sum of fifty dollars, to be recovered in said action or in an action brought therefor by the fire commissioner."

Conceding, necessarily, that neither a dumb-waiter shaft nor anything of the sort is included or alluded to in the things enumerated, from stoves to chemical apparatus, counsel for the city contends with persistency and length, hard to ignore, that the power claimed is legally conferred in the words "or other things," and also that existence of the power should be acknowledged judicially, because of the reasonableness of its exercise and the danger of its curtailment in this instance. Under venerable application of the ancient maxim, "Noscitur a sociis," general after special words imply no extension of the category or categories expressly indicated, but at most cover something of the like sort, and only of the like sort or class, as is settled in a series of cases of two centuries.

Neither upon the reasonableness of the order nor upon the facts asserted (without evidence thereof) need this court pass, although a spectacular instance is within memory where a former functionary, against the warning of an architect of ability and an engineer of eminence, directed the plating of an important structure, the burning of which proved unextinguishable because of the plating. If the facts really be that "the whole history of New York fires shows that the dumb-waiter shafts are the most dangerous means of promoting fires," and "there is scarcely a thing, except powder and oil, which will be more instrumental in promoting fires," it is curious that these facts have not been brought to the attention of the public and of the Legislature by the functionaries who under various titles have had cognizance of building construction in this town since 1866.

However great be the dangers imagined, the individual harm to come from the destruction of some building material or even hazard of life will be less than the public harm if courts cover into the statutes, as legalization, the opinions of officials as to matters not contemplated by the lawmaking power, graft the notion of a departmental subordinate for the time being into the "pouvoir superieur" resorted to in extreme cases upon the continent of Europe by the government head of the state.

The judgment should be affirmed, with costs to the respondent.