Alexander Del Gtorno, J.
This is a motion for an order dismissing the claim upon the ground which appears upon the face thereof that it does not state facts sufficient to constitute a cause of action against the State of New York, and upon the further ground that the claim is barred by the Statute of Limitations. Although not so stated in the notice of motion, the first portion of the motion is made pursuant to subdivision 4 of rule 106 of the Rules of Civil Practice and the latter to subdivision 5 of rule 107.
Submitted in support of both alleged grounds for dismissal is the affidavit of the Assistant Attorney-General.
The court will consider first that part of the motion made pursuant to rule 106, namely, that the claim does not state facts sufficient to constitute a cause of action. The affidavit submitted cannot be considered, since only the pleading itself may be passed upon. (St. Regis Tribe v. State of New York, 5 N Y 2d 24; Purdy v. McGarity, 262 App. Div. 623; King v. Krischer Mfg. Co., 220 App. Div. 584.) While affidavits may be con *829 sidered as to that part of the motion brought under subdivision 5 of rule 107, the facts brought out under that rule may not be considered on the part of the motion made under subdivision 4 of rule 106 (Berwin & Co. v. American Safety Razor Corp., 282 App. Div. 922). The court may take judicial notice, however, of laws and statutes beyond the face of the claim (Richardson, Evidence [8th ed.], §8 et sec[.; Civ. Prac. Act, § 344-a) and thereby read them into the claim. (St. Regis Tribe v. State of New York, supra; Pfleuger v. Pfleuger, 304 N. Y. 148; Walsh v. Trustees of N. Y. and Brooklyn Bridge, 96 N. Y. 427, 438.)
On this motion to dismiss for legal insufficiency, the State accepts as true the relevant allegations of fact and the reasonable inferences to be drawn therefrom. (Civ. Prac. Act, § 275; Garvin v. Garvin, 306 N. Y. 118, 120; Denihan Enterprises v. O’Dwyer, 302 N. Y. 451, 458.)
The claim alleges, upon information and belief, that pursuant to the Highway Law the County of Rockland certified to the State of New York, in the year 1931, that it had acquired a portion of the cemetery land owned by claimant comprising approximately 2.169 acres; that thereafter the State came upon the premises and has occupied the same for State highway purposes; that all of this procedure was in contravention of section 95 of the Membership Corporations Law in that none of the requirements therein was accomplished, and in contravention of the Highway Law then applicable in that no award was ever made and no compensation ever paid to the cemetery, and that the procedure was contrary to the due process provision of the State Constitution and the Fourteenth Amendment to the United States Constitution. The claim is silent as to whether the cemetery association was served or appeared in the appropriation proceeding. The claim demands damages in the sum of $100,000 for trespass and for confiscation of property without due process of law.
The controlling law at the time in question was sections 148 and 150 of the Highway Law. Section 148, dealing with the acquisition of lands for right of way and other purposes, provided that in certain situations the county Board of Supervisors shall provide the requisite right of way, and then proceed to advertise. Section 150 provided that if the Board of Supervisors could not acquire lands by purchase, it might petition the County Court or Supreme Court for the appointment of three Appraisal Commissioners to determine compensation to be paid to owners, and set forth certain procedural requirements.
Whether the provisions of the statute were followed properly is a question of proof on the trial of this claim. For the purpose *830 of this motion, the allegations of the claim are controlling. Claimant has alleged the facts that the County of Rockland made the certification to the State that it had acquired the land and that the State then came upon the premises and has occupied the same for highway purposes. Up to this point the allegations of the claim are sufficient.
The question then arises whether section 95 of the Membership Corporations Law must have been adhered to as a condition precedent to the purported acquisition of the property by the county or State, and whether the procedure followed was invalidated by failure to do so.
Section 95 of the Membership Corporations Law provides as follows: “ § 95. Stbeets ob highways hot to be laid out thbough gebtaih cemetery lahds. So long as the lands of a rural cemetery corporation organized under the act entitled ‘ An act authorizing the incorporation of rural cemetery associations, ’ constituting chapter one hundred and thirty-three of the laws of eighteen hundred and forty-seven, and the acts amendatory thereof, shall remain dedicated to the purposes of a cemetery, no street, road, avenue or public thoroughfare shall be laid out through such cemetery, or any part of the lands held by such association for the purposes aforesaid, without the consent of the trustees of such association, and of two-thirds of the lot owners thereof, and then only by special permission of the legislature.”
The claim alleges that all of the acts of the county and the State were ‘ ‘ in contravention of § 95 of the Membership Corporations Law in that none of the requirements therein were accomplished”.
The State cites the case of Catskill Rural Cemetery Assn. v. Greene (155 Misc. 492) as holding that section 95 of the Membership Corporations Law does not apply to an acquisition pursuant to the Highway Law provisions because it is an act of eminent domain. The instant case is distinguishable, however. In the Gatshill case, the cemetery association sought an injunction against the construction of a public highway through the lands of the association. In the condemnation proceeding, the cemetery association appeared by its counsel and appeared also when application was made for the appointment of the appraisers and when the judgment of condemnation was granted, at no time filing any objections or interposing any answer. The court held that the cemetery association had had its day in court and by its failure to object has waived any right which it may have had to an injunction against the State. By way of dicta, the court said (pp. 493-494) that “ it would seem that *831 cemetery lands may be taken by virtue of the right of eminent domain * * * The right of eminent domain springs from the sovereignty itself and is a right necessarily incident to all government. When the requirement of the Constitution for the payment for private property taken for public use has been complied with, such taking is valid and legal.”
In the Catskill case, the court cited Matter of Board of St. Opening (133 N. Y. 329 [1892]) wherein the court held (pp. 331-335): “ We have examined the authorities, to which our attention has been called by the learned counsel for Trinity Church, and none of them in the least degree sustain the contention that lands devoted to private cemeteries owned by private individuals or a private corporation, cannot be condemned under the general language authorizing their condemnation for public use. On the contrary, the following authorities give strong sanction to the claim that such lands can be taken under general legislative authority for a public use unless specially protected by statute. [Authorities cited.] ”
It is to be noted that in the Matter of Board of St. Opening case, the cemetery of Trinity Church had been established in 1801. It was used until 1839, when an ordinance was passed, forbidding interments in that part of the city.
Neither the Catskill case nor Matter of Board of St. Opening (supra) decides the question as to whether compliance with section 95 of the Membership Corporations Law by the State, in issue here, constitutes a prerequisite to the institution of an appropriation proceeding. Indeed, in the latter case, the words “ unless specially protected by statute”, might indicate that such compliance would be a condition precedent.
On the other hand, that the power of eminent domain may be limited by the Legislature by way of exemption from its exercise is indicated by the case of Society of N. Y. Hosp. v. Johnson (5 N Y 2d 102). There plaintiff, a charitable corporation sued to restrain the State Superintendent of Public Works from attempting to acquire by appropriation for highway purposes a part of plaintiff’s hospital lands. The main question of law was as to the effect on the Sup erinendent’s eminent domain powers of chapter 659 of the Laws of 1927, which stood unrepealed and provided that no street or avenue or road should thereafter be laid out or opened through the land of plaintiff so long as it should be owned or occupied for hospital purposes by the plaintiff, provided' plaintiff dedicated, without claim or award for damages, for street purposes, certain parcels of land, and paid $150,000 in addition for the paving and regulating of the street described in certain numbered parcels. Passed at the *832 same time and concurrently signed by the Governor was chapter 653 of the Laws of 1927, also still on the books, which amended the charter of the City of White Plains and provided that it should be unlawful to open any streets through grounds belonging to plaintiff so long as they should be occupied for hospital purposes. Plaintiff carried out its part of the bargain by conveying to the city the real property described in chapter 659 and by paying the sum set forth. Under the Highway Law, the Superintendent was authorized to appropriate certain lands, and to carry out those purposes the Superintendent considered it necessary to appropriate a narrow strip of plaintiff’s land, presently vacant but used for hospital purposes.
The court held (p. 107) that in the two 1927 acts, the Legislature announced its intention not to take any of the hospital lands and forbade the city or anyone else from appropriating them, stating, “ Such a legislative declaration and mandate continues to express the legislative intent until a contrary intent is displayed.” Laws passed after 1927 authorizing the Superintendent to acquire lands anywhere in the State for highway purposes, like all statutes authorizing officers of bodies to exercise the right of eminent domain must be strictly construed. “ It is not strict construction of generally worded statutes like these Highway Law sections to read them as wiping off the books the special 1927 statute passed by the Legislature as to specific lands and for a substantial consideration. * * # Its
positive direction not to take described lands should in reason be cancelled only by an equally plain command or permission to appropriate. There have been enacted over the years other special statutes exempting from condemnation specific properties used for certain purposes ” (pp. 107-108). Among these statutes, the court mentioned specifically section 95 of the Membership Corporations Law and continued, “ Since such exemptions are, though subject to repeal, traditional and valid, public policy requires that their repeal or abrogation be evidenced by clear legislative language ” (p. 108).
As to this phase of the motion, to dismiss the claim because it does not on its face state facts sufficient to constitute a cause of action, this court holds that the claim does state facts sufficient to constitute a cause of action.
The court now proceeds to that portion of the motion which seeks an order of dismissal on the ground that the claim is barred by the Statute of Limitations;
The claimant was incorporated in 1887, pursuant to the Laws of 1847. In the first 20 years of its operation the cemetery was laid out with plots, walks and roads. In 1920, there ceased to *833 be any formal organization of the cemetery, although interments continued to be made and the individual lot owners continued to provide care for their lots. At the present time, more than 1,000 interments have been made and 400 grave stones are standing. In 1931, there were no known officers or trustees of the cemetery available in Rockland County, the original officers and trustees of 1886 being probably deceased. There were and still are lot owners available in the county but no known attempt was made by the county to find any of them. Very little seems to be known about the cemetery records after 1915. From 1931 to the present, interments have been made on the basis of about five per year. The cemetery was reincorporated in 1958 and its by-laws, rules and regulations having been approved by the State Cemetery Board, it has been in corporate operation.
In the 1931 proceeding, a petition was filed in the County Court proceeding following service by publication of the statutory notice. The cemetery did not appear in the proceeding, and although Commissioners of Appraisal were appointed by the court and they filed their oaths of office, no appraisal was made by them and the proceeding was not prosecuted further. After its reincorporation in 1958, the cemetery filed an appearance in the condemnation proceeding pending since 1931, and presented a petition to the County Court requesting that the county secure special legislative permission to place the highway across rural cemetery lands and that the court appoint Commissioners. The court appointed the Commissioners, reserving decision on other questions. There is pending in the County Court a motion for an order staying the Commissioners ’ hearings and directing the county to obtain the special legislative permission.
The court finds that claimant has shown facts in avoidance of the State’s assertion that the cause of action did not accrue within the time limited for the commencement of an action thereon, sufficient to compel a denial of the motion (Corash v. Texas Co., 264 App. Div. 292).
In any event, the claimant has pleaded that it was and still is the owner in fee of the premises, and that the claim is in trespass, among other things. Under the circumstances there can be no prescription of a grant or title in the State by virtue of adverse possession. The continued existence of the highway, therefore, constitutes actionable continuing trespass. (Galway v. Metropolitan El. Ry. Co., 128 N. Y. 132.) The allegation of trespass leads to the conclusion by the court that the motion to dismiss for legal insufficiency and on the ground that the claim is barred by the Statute of Limitations cannot be granted. *834 If claimant is entitled to recover on any theory of the facts pleaded, the motion to dismiss for legal insufficiency must be denied. (Tripp, A Guide to Motion Practice [Rev. ed.], p. 245.; Abrams v. Allen, 297 N. Y. 52; O’Neill Supply Co. v. Petroleum Heat & Power Co., 280 N. Y. 50; Condon v. Associated Hosp. Serv., 287 N. Y. 411, 414.) This is true even if claimant cannot obtain all the relief sought, so long as it can obtain some relief. (Steisel v. Gratzer, 272 App. Div. 673.) By reason of the foregoing, the motion is denied in all respects.