161 So. 610

## DUPLANTIS v. CHAUVIN.

No. 33297.

April 29, 1935.

Harris Gagne, of Houma, for appellant.

Caillouet & Caillouet, of Thibodaux, for appellee.

BRUNOT, Justice.

This is a suit for damages. The sum prayed for is $2,050. An exception of vagueness was filed, argued, submitted, and maintained and, in compliance with the court's order, the plaintiff filed a supplemental and amended petition. The averments of both petitions were answered, the case was tried, and judgment was rendered in favor of the plaintiff and against the defendant for $50, with legal interest thereon from judicial demand, and for costs. An appeal from the judgment to the Court of Appeal, First Circuit, was granted to the plaintiff and perfected by him. The Court of Appeal found that the suit is not one for personal injuries nor for compensation, and, as the sum prayed for exceeds that court's maximum jurisdictional limit, except in such cases, it ordered the case transferred to this court.

The defendant owns a tomb in the Catholic Cemetery, in Houma, La. The tomb contains six vaults arranged in tiers of three. For a rental consideration of $50, payable in cash, one of the vaults may be rented for a maximum term of one year and a day, and be held for that term at the disposal of one who desires to provide a temporary sepulcher for their dead. On June 21, 1932, the defendant rented one of the vaults to the plaintiff for the interment of the body of the plaintiff's sister. Early in the month of June, 1933, a few days before the expiration of the term for which he had rented the vault, the plaintiff discovered that the body of his sister had been removed from the vault in which it had been interred and placed in another vault, the opening of which had not been properly sealed.

It is clearly shown that the transfer of the body of plaintiff's sister from one vault to another was the result of an error of fact. The continuing testimony in the case is reviewed at length by the trial judge, and we think the conclusions he expresses are correct. He says:

"The defendant further testifies that, having contracted to accommodate another body, he sent his son, who is a brick-mason, to prepare a compartment for its reception—telling him to open the oldest vault for that purpose, and if it had been occupied for more than a year, and mentioned the top vault which had been 'let' to plaintiff; that after his son had opened the 'top' compartment and removed the remains of plaintiff's sister, he, the defendant, came to the Grave Yard and discovered that the body had not occupied the vault for the stipulated period of a year—and that a mistake had been made in disturbing it.

"However, since the body had already been removed from the 'top' compartment, and since the new body for the reception of which, the defendant was then arranging was that of a child, the defendant decided to place the smaller body (that of the child) in the 'top' vault, and to place the remains of plaintiff's sister in the lowest compartment of a tier of three—and did so.

"Upon being told by defendant where his sister's body was, plaintiff visited the place, and found that the front had not been properly closed. Loose brick, without mortar, had been corded in the mouth of the vault, leaving an unclosed crack of several inches.

"The moving of the body appears to have been done some time in April, though it did not come to plaintiff's notice until early June. It was only after plaintiff complained to the Coroner that the vault was properly sealed so as to exclude the weather.

"The Court understands and appreciates the sense of outraged feelings that must have assailed the plaintiff upon discovering the established state of affairs, and sympathizes with his complaint. Having entered into a contract for the devotion of the compartment to the housing and protection of his sister's body for a specific period, he had every reason to expect that the 'staus quo' would not be disturbed during that period.

"The Court also knows the defendant to be a deserving and well-intentioned citizen, who, through a long life characterized by industry and integrity, has earned the respect and confidence of the community in which he has always lived. The violation of the contract by the opening of the compartment and the disturbance of the body is established.

"The Court is of the opinion that the contract had particular reference to the particular compartment in which the body of plaintiff's sister was originally enclosed.

"Though at the time of bargaining no particular individual compartment may have been in mind or described, and it may, at that time, have been left optional with the defendant to designate and make available to the plaintiff any one of the compartments, or vaults, in his tomb constructure; nevertheless, having exercised that option by directing plaintiff to the particular 'top' compartment, of a 'tier of three' compartments in said structure, that particular compart-

ment became the 'leased object' with which the contract was concerned.

"From the moment that plaintiff deposited the body of his sister therein and paid the stipulated contract price, he, rather than the defendant, entered into the possession and * * * control of that particular compartment, in so far as the 'right of entry' and disturbance of the body was concerned.

"From the moment that the sister's body was sealed in said compartment, until the lapse of the period stipulated for its occupancy, the defendant was as devoid of right to break and enter therein, or to touch or disturb the body therein, as was any other person not especially authorized by the plaintiff.

"If the Court correctly grasped the attitude of the defendant as a witness, he does not claim that the compartment was opened in April, 1933 and the body removed therefrom in the assertion and exercise of any right; to the contrary, he says that it was done in error; that he only discovered his son's error in removing a body that had not occupied the vault for the prescribed period of 'a year'—after the removal had actually been accomplished.

"The Court believes that statement to be true.

"However, upon discovering the error of his son, instead of immediately restoring the body to its rightful compartment, he, as a matter of convenience, elected to place it in a different compartment—and to utilize the vacated compartment for the accommodation of a 'smaller' body.

"The Court does not believe that in consulting the suggestion of convenience, the defendant was actuated by any desire or willingness to flout or disregard the rights of the plaintiff.

"It conceives that, the error having been made, the defendant thought that he was repairing it adequately by re-enclosing the disturbed body in a similar compartment in his tomb-structure. The circumstance that he was placing the body in a different compartment did not appeal to him as important.

"From his point of view as owner of all of the compartments, the change was not of importance.

"The same is not true of the plaintiff. He had paid for the use of the 'top' compartment; had duly interred the body of a loved sister therein; had seen her name inscribed on the front thereof; felt that he knew that her remains were securely preserved therein; and was accustomed, occasionally, to repair thereto for devotional purposes as a tribute to her memory, and in testimony of his affection for her, and sorrow for her death.

"To him, that particular 'top' compartment was a sacred shrine, rendered precious by the occupancy of 'his dead,' and the magic of her name on the front elevated it * * * to a post of importance in his feelings, before which all other similar sites dwarfed into insignificance.

"Even though the body was disturbed in inadvertent error,—and even though its deposit in a different vault was prompted by the purest of intentions and good faith. * * * Only the prompt return of the body to its rightful compartment, could have ade-

quately atoned for the trespass, however innocent and unintentional it may have been.

"The circumstance of the entrance of the substitute compartment being left unsealed—although not intended by, or known to the defendant—was but a further failure of the defendant to observe his contract with the plaintiff. Certainly his contract placed upon him the obligation of keeping the 'rented sepulcher' in reasonable and usual repair—at least closed against the weather.

"The Court believes that the unsealed condition of the vault-front is attributable to the forgetfulness of his son—nevertheless, the fault was his in not seeing that the vault was properly sealed, especially in view of the fact that his son had already fallen into one inadvertence in opening plaintiff's 'leased vault' before the lapse of the stipulated 'year & a day.'

"The contract guaranteed undisturbed possession to the plaintiff for a 'year and a day.'

"Though not with malice, or willfully or viciously, or with intent, desire or willingness to injure plaintiff or wound his feelings, the spirit and intent of the contract had been violated by the defendant.

"Aside from his wounded feelings and mental & spiritual suffering, plaintiff has not been materially damaged, except by the deprivation of his contractual rights.

"But it is undeniable that he has not received that for which he contracted & paid, viz: 'The exclusive and continuous use, for a year and a day, of the particular compartment in which he placed the body of his sister in June, 1932.'

"The Court thinks that the contract price should be refunded.

"While, in the case of some contracts, it may be equitable and just to make only a pro-rata refund of the 'consideration' proportionate to the extent of partial performance, this case does not so appeal to the Court.

"In a matter so close to the human heart as providing for one's dead, a contract to receive and preserve a body in a designated resting place for 'a year and a day,' certainly classified the 'time period' as the essential essence of the contract—without which it would not have been made. Unless that obligation be fully met, the obligee has failed in the very essence of his undertaking, and should refund the consideration which was exacted in advance.

"Though the defendant points out and testifies that the body of plaintiff's sister actually remained in the second compartment to which he transferred it for more than a year and a day, and still was there when this case was tried, the Court remains convinced that the contract with the plaintiff was violated, and that the contract price should be refunded, and paid to plaintiff as the measure of damages suffered by him.

"Under his contract, the defendant was without right to disturb the body in less than a year and a day. He was also without right to transfer it to another compartment without plaintiff's consent.

"Under the contract, plaintiff was entitled to the undisturbed use of the 'top vault,' for the full period of a year and a day—and to find the body of his sister therein on any

day that he chose to repair thereto in deference to her memory.

"He cannot be asked to accept as adequate, her arbitrary transfer to other quarters than those in which plaintiff deposited her on the day of interment."

For the reasons assigned by the trial judge, which we approve, we think the judgment appealed from is correct, and equitable, and it is therefore affirmed at appellant's cost.