Dear Mr. Shows:
You have requested an opinion from this Office regarding the right to and process for a political subdivision to expropriate property in a cemetery. In order to answer your request, it is prudent to review the factual situation surrounding that request as well as review related issues that are relevant to this matter.
I. Introduction
You have noted that one of the Project Green Light road improvements will necessitate the use of a small portion of the historic Knox Cemetery in Baton Rouge. In addition, you have informed us that a cultural resources (or archaeological reconnaissance) survey has been conducted in the project area and it is known that no graves will be disturbed by the planned project.
As an initial matter, we applaud the proactive measures that East Baton Rouge Parish has taken to ensure against impacts to cultural resources in this matter. However, we have noticed that other parties situated to impact or potentially impact cemeteries in this State have not been so proactive and informed as has East Baton Rouge of late. For that reason, we feel that it is imperative not only to take this opportunity to address your specific request, but to also set forth a concise statement of the law as it applies to the use of cemetery property for non-cemetery purposes.
To specifically answer your question, however, we are not aware of any special rules that apply to political subdivisions with respect to the expropriation of cemetery property that do not otherwise apply to all entities with expropriation authority or to private parties with cemeteries on their property that they want to *Page 2 
disturb or move.[1] We are aware that Title 8 of the Revised Statutes does contain specific laws dealing with municipalities and cemeteries, but these laws deal with the establishment of municipal cemeteries rather than expropriating cemetery property for non-cemetery uses and are thus inapplicable to your question. See, La.R.S. 8:108 and La.R.S.8:112.
The legal issues dealing with cemeteries in Louisiana that may be impacted by construction are fairly complex. The legislation that applies to these matters is spread over several portions of the Revised Statutes and gaining a clear picture of the applicable law is essential.
II. General Expropriation Law
The general provisions of expropriation law in Louisiana are found at La.R.S. 19:1, et seq. Under this law, when a price for purchasing property needed for a public purpose[2] cannot be agreed upon by the expropriating authority[3] and the owner, certain properties may be expropriated for public purposes, including:
 1) "the construction of railroads, toll roads, or navigation canals;"[4] *Page 3 
 2) "the construction and operation of street railways, urban railways, or inter-urban railways;"[5]
 3) "the construction and operation of waterworks, filtration and treating plants, or sewerage plants to supply the public with water and sewerage;"[6]
 4) constructions for the transportation of natural gas;[7]
 5) the erection of telephone or telegraph lines;[8]
 6) the erection of electricity lines and the construction of the infrastructure necessary to support such lines;[9]
 7) the construction of other pipelines;[10] and
 8) various other provided-for activities.[11]
Excepted from this listing of appropriate uses of the power of expropriation is anything that will impact cemetery property. Specifically, La.R.S. 19:3 states that,
 [n]o graveyard or cemetery shall be expropriated unless the court finds that the route of expropriation cannot be diverted from that proposed by the plaintiff without great public loss or inconvenience. *Page 4 
It is unclear from the law in Title 19 what actually constitutes a "graveyard or cemetery" or what constitutes "loss or inconvenience." For an appreciation of what constitutes a "graveyard or cemetery," we must look to Title 8. Title 8 defines a cemetery as:
 a place used or intended to be used for the interment of the human dead. It includes a burial park, for earth interments; or a mausoleum, for vault or crypt interments; or a columbarium, or scattering garden, for cinerary interments; or a combination of one or more of these.
La.R.S. 8:1(7). Although it is not specifically defined by Title 8, it is the opinion of this Office that the above definition of cemetery also encompasses the term "graveyard" as it is contemplated by La.R.S.19:3.[12] However, we are further of the opinion that the terms "graveyard or cemetery," as used in La.R.S. 19:3 also encompasses the term "unmarked burial site," which is defined by La.R.S. 8:673 as:
 the immediate area where one or more human skeletal remains are found in the ground that is not in a recognized and maintained municipal, fraternal, religious, or family cemetery, or a cemetery authorized by the Louisiana Cemetery Board.
As for what constitutes a "loss or inconvenience," there is some jurisprudential guidance in this regard. In City of New Orleans v.Christ Church Corp., 81 So.2d 855, 858 (La. 1955), the Louisiana Supreme Court found that the La.R.S. 19:3 requirement that a "great loss or inconvenience" that must exist before the expropriation of cemetery property has been met when cemetery property "is vitally needed for street purposes". Because the Green Light Project is intended to alleviate the terrible traffic congestion in the Baton Rouge area, we suspect that the Knox Cemetery property will similarly be found to be "vitally needed" by a court of competent jurisdiction. However, this is a factual matter that needs to be decided by a court either in a declaratory judgment action or in the context of an expropriation action.
III. Applicable Cemetery-Specific Law
As a general matter, most cemeteries are controlled by the law in Title 8 of the Revised Statutes. The law in this Title places further limitations on the use of cemetery property for non-cemetery purposes. *Page 5 
 A. Expropriation of Cemetery Property When Burials Will Not beDisturbed
If cemetery property must be used for a particular project, the property will have to be acquired from its owners. This can be done either through purchase or expropriation. Generally, before anyone can go the route of expropriation, a good faith effort must be made to identify and contact the cemetery authority[13] and the owners of interment rights in the cemetery. These requirements are embodied in La.R.S. 8:316. That law provides that:
 After dedication pursuant to this title, and as long as the property remains dedicated to cemetery purposes, no railroad, street, road, alley, pipe line, pole line or other public thoroughfare or utility shall be laid out, through, over or across any part of it without the consent of the cemetery authority owning and operating it. If said cemetery authority is not in existence or not operating, then the consent of not less than two-thirds of the owners of interment spaces shall be required.
With respect to Knox Cemetery, it is apparent that, due to its age, that there is no cemetery authority managing the property. Accordingly, the next step would be to seek authority from those owning interment rights in the cemetery for permission to use the property for non-cemetery purposes. Because Knox Cemetery is a historic cemetery, it is unlikely that anyone who owned an interment right in the cemetery is still alive. Title 8 does provide for the heritability of such rights, and due diligence may involve making a good faith effort to locate the descendants of those known to be interred in a cemetery. See, La.R.S.8:803. Failing such identification, because the cemetery's use predated the existence of the requirements in Title 8 that govern how cemetery authorities are to function, it is doubtful that any written records exist to evidence such interment rights that may be identifiable from the successions of those who originally owned the rights, aside from tombstone inscriptions (which certainly would not be helpful in areas of a cemetery with no visible grave markers).
This scenario presents a conundrum that is not contemplated by Title 8. In the absence of both a cemetery authority and identifiable owners of interment rights, it is the opinion of this office that the standard procedure for expropriation may be *Page 6 
used when it can be shown that no burials will be disturbed in the planned construction process.[14]
 B. Dedication of Property for Cemetery Use
The "dedication" referred to in La.R.S. 8:316, supra, is the dedication of property for cemetery purposes under La.R.S. 8:304. There is no distinction in the law as to whether cemetery property becomes "dedicated" simply by virtue of its use as a cemetery or if something must be filed in the court records to effectuate the dedication. We are aware that the Louisiana Cemetery Board's ("LCB") position has consistently been that it is merely the use of property as a cemetery that effectuates the dedication.[15] Due to the generally inviolate status that cemeteries hold within our culture, it is the opinion of this Office that the LCB's position is likely what was intended by the Legislature with La.R.S. 8:304. Accordingly, even after the owners or cemetery authority has been contacted pursuant to La.R.S. 8:316, and (if necessary) the remains have been removed, the property is still subject to the restrictions embodied in La.R.S. 8:304 until the dedication has been removed pursuant to La.R.S. 8:306-307.
The dedication cannot be removed until all remains have been properly removed from the portion of the cemetery that will be affected by a project. In addition, only a court can remove the dedication. Once any remains have been removed from the impacted area, it is the opinion of this Office that the party seeking to use the cemetery property for non-cemetery uses may apply for a declaratory judgment to the district court for the parish in which the cemetery is located seeking an order that the cemetery dedication should be removed. In addition, La.R.S.8:306 requires that notice of such an action be served upon the LCB. *Page 7 
 C. Expropriation of Cemetery Property When Burials Will be Disturbed
When burials will be disturbed, as is not the case here, two different sets of rules for expropriation may apply.
1. Disturbance of Marked Burials
In situations in which marked burials[16] are to be disturbed by a planned project, these burials must be moved prior to any construction activity. Moving human remains from an interment cannot be a unilateral activity. Title 8 provides a specific schedule of individuals who must give permission for the moving of human remains. La.R.S. 8:659. Louisiana Revised Statute 8:659 provides that:
 A. The remains of a deceased person may be moved from a cemetery space to another cemetery space in the same cemetery or to another cemetery with the consent of the cemetery authority and the written consent of one of the following, in the order named, unless other directions in writing have been given by the decedent:
 (1) The surviving spouse, if no petition for divorce has been filed by either spouse prior to the death of the decedent spouse.
 (2) The surviving adult children of the decedent, not including grandchildren or other more remote descendants.
 (3) The surviving parents of the decedent.
 (4) The surviving adult brothers and sisters of the decedent.
 B. If the required consent cannot be obtained, a final judgment of the district court of the parish where the cemetery is situated shall be required.
It is the opinion of this Office that, following a good faith effort to locate and obtain permission from the individuals listed in La.R.S.8:659(A)(1)-(4), that a court may be petitioned pursuant to La.R.S.8:659(B) for the removal of remains. Because most cemeteries that will be impacted by planned construction will likely be historic, the requisite individuals in La.R.S. 8:659(A)(1)-(4) may no longer be living. In addition, there will likely be no cemetery authority associated with such *Page 8 
cemeteries. Once those facts have been established, it is further the opinion of this Office that the party wishing to move the remains should follow the procedure of La.R.S. 8:659(B). Although La.R.S. 8:659 does not contemplate a party other than the cemetery authority seeking such a judgment from a court, we are of the opinion that this apparent oversight was not intended to stifle future generations from, as a matter of last resort, [17] using former cemetery property for other purposes. Accordingly, it is our opinion that, in the absence of the existence of a cemetery authority, the party wishing to move remains pursuant to La.R.S. 8:659(B) may petition a court for such removal.
We find it interesting to note that, in one of the few reported cases that deals with the issues discussed in this opinion, [18] the Louisiana Supreme Court required the appointment of a curator-ad-hoc to represent the interests of the unknown individuals interred in Girod Cemetery in New Orleans during the expropriation process. This appointment was based on former Louisiana Civil Code Article 56, which stated:
 If a suit be instituted against an absentee who has no known agent in the State, or for the administration of whose property no curator has been appointed, the judge, before whom the suit is pending, shall appoint a curator ad hoc to defend the absentee in the suit.
Following the passage of Act 989 of 1990, this article no longer exists.[19] Accordingly, it is our opinion that, in cases filed pursuant to La.R.S. 8:659(B), there is no legal necessity for the appointment of a curator to represent the interests of those whose descendants cannot be found or identified following a diligent effort. However, the simple lack of necessity for such an appointment does not mean that a court could not, of its own motion, appoint such a curator, should it find that the circumstances warrant such an appointment — only that it is no longer required by law.[20] *Page 9 
 2. Disturbance of Unmarked Burials
The disturbance of unmarked human burials generally occurs inadvertently, as, by definition, there is typically no indication on the ground surface that such burials are present below. The disturbance of such burials is specifically regulated by the Louisiana Unmarked Human Burial Sites Preservation Act, La.R.S. 8:671, et seq. Because of the complicated nature of this law and the fact that it does not apply to your specific situation, a detailed review will not be here undertaken. Suffice it to say that any disturbance of unmarked human burials must be done only pursuant to a permit issued by the Louisiana Division of Archaeology ("the Division") and that civil and criminal penalties exist for a failure to comply with the requirements of La.R.S. 8:671, et seq.
It is important to note, though, as intimated above, that the Green Light Project has been proactive in its efforts to comply with the law and that no unmarked human remains were found during the archaeological testing of the planned project area. Accordingly, it is our opinion that La.R.S.8:671, et seq. does not apply to your opinion request.
IV. Contacting the Appropriate State Entities
In furtherance of an answer to your opinion request, we feel it appropriate to note the two State entities that should be contacted when cemeteries are implicated in a planned construction project. These entities are the LCB and the Division.
The LCB maintains a database of cemeteries that it licenses and may also have some information on exempt cemeteries. Although the LCB has no authority to permit non-cemetery activities within a cemetery, it does have the authority, through the Attorney General or on its own, to institute lawsuits for violations of Title 8. Such violations may include disturbing remains or otherwise conducting construction activities without first complying with Title 8.[21] Because of this general oversight authority, it is prudent to check with the LCB for whatever information it may have regarding the cemetery in question and to advise that Board of any planned activity that may impact a cemetery. You can also check the LCB's Web site to see if the cemetery in question is a licensed cemetery. That URL is http://www.lcb.state.la.us/. If the cemetery is listed with the LCB, finding the owners and interested parties will be much easier.
Unfortunately Knox Cemetery is likely a family cemetery. Such cemeteries are generally exempted from the jurisdiction of the LCB, thus making it harder to find out information about them. Although we are aware that Knox Cemetery is not a cemetery that is currently under the jurisdiction of the LCB, it is worthwhile to *Page 10 
notify the LCB of your planned activity so that it is on that Board's radar screen should complaints or questions come in from the public.
Along the same lines, you should also notify the Division of your plans and check with that entity to see if the cemetery is also designated as an archaeological site.[22] If the cemetery were a designated archaeological site, historic preservation laws may be implicated. We have checked with the Division and have found that (1) Knox Cemetery is not a designated archaeological site; and (2) that because you have already conducted archaeological investigations at the site, you are in compliance with that entity's rules and regulations.
V. Summary and Conclusions
In summation, due to the complex nature of the applicable law, we find it prudent to recapitulate the salient points of this opinion. Specifically to your question regarding the procedure for expropriating the Knox Cemetery property, we offer the following recommendations:
 1. Conduct a surface survey to identify grave markers that might be impacted by the planned activity (which you have already done);
 2. Conduct a subsurface archaeological survey to identify unmarked graves that might be impacted by the planned activity (which you have also already done);
 3. Contact both the Louisiana Cemetery Board and the Louisiana Division of Archaeology to notify them of your plans and to obtain any information that they may have regarding the subject cemetery (also already done);
 4. Because no cemetery authority currently exists for the cemetery and because it is clear that the proposed project will not disturb any human remains, the Parish should initiate an expropriation proceeding in the Nineteenth Judicial District Court pursuant to the general rules for expropriation in Title 19; and
 5. In conjunction with the expropriation proceeding, the Parish should also request that the court remove the cemetery dedication for that portion of Knox Cemetery that is implicated by the planned project. *Page 11 
 6. In the unlikely event that, despite the findings of your archaeological research at Knox Cemetery, human remains are encountered during the planned project, you must immediately stop operations and follow the requirements of the Louisiana Unmarked Burial Sites Preservation Act, La.R.S. 8:671, et seq.
Under the factual information that you have presented to this Office, we cannot say that any of the more onerous requirements of using cemetery property apply to this situation. Because of the reality that your archaeological survey has demonstrated that no burials will be impacted, this matter (aside from the removal of the dedication) largely becomes a standard expropriation proceeding.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By:
 RYAN M. SEIDEMANN Assistant Attorney General
 JDC/RMS/tp
cc: Ms. Lucy L. McCann, Director, Louisiana Cemetery Board Dr. Charles R. McGimsey, Louisiana State Archaeologist
[1] One potential exception to this caveat is La.R.S. 33:4621. That statute states that,
 Municipalities and parishes may expropriate and otherwise acquire any private property, within or without their limits, for any of the purposes for which they are organized, and for any works that they are authorized to own or operate, or which they are authorized to lease or donate to the United States. This Part shall not be construed to confer authority upon a parish or municipality to expropriate property in any other parish without the consent of the police jury of the parish in which the property is situated.
At least one court has found La.R.S. 33:4621 as additional authority (beyond the Title 19 expropriation law) for municipalities to expropriate cemetery property. See, City of New Orleans v. Christ Church Corp.,81 So.2d 855, 858 (La. 1955). However, it is our opinion that this potentially additional grant of expropriation authority does not impact the approach to cemetery property expropriation that must be followed under Louisiana law, as this law and its interpretations by the Louisiana Supreme Court predate the cemetery protection provisions of Title 8 of the Revised Statutes.
[2] It is interesting to note that the term "public purpose" for the purposes of expropriation has been the subject of much debate in recent years. Following the United States Supreme Court decision in Kelo v. Cityof New London, Conn., 545 U.S. 469 (2005), many state legislatures — Louisiana's among them — quickly moved to enact state-level protections against the taking of private property for private purposes. Louisiana's version was enacted as Act 851 of the 2006 Regular Session, which amended La.Const Art I, Sec. 4 and Art. VI, Sec. 21. Although it is clear that the Green Light Project clearly fulfills the classification of a "public purpose" to which Kelo and Act 851 of 2005 do not apply, a review of these sources, as well as La. Atty. Gen. Op. No. 07-0147, may be warranted in future cemetery expropriation situations.
[3] The term "expropriating authority" generally applies to governmental entities and the private entities with the authority to carry-out the activities listed in La.R.S. 19:2.
[4] La.R.S. 19:2(2).
[5] La.R.S. 19:2(3).
[6] La.R.S. 19:2(4).
[7] La.R.S. 19:2(5). It should also be noted that, although general expropriation rules permit expropriation for the construction of hydrocarbon pipelines, the exploration for and production of minerals is expressly prohibited within the confines of a cemetery in Louisiana. La.R.S. 8:901. The outstanding question is whether it also prohibits seismic activity within such cemeteries. The law clearly prohibits "prospecting" within cemeteries. We have been unable to identify any Louisiana jurisprudence that defines prospecting in terms of conducting seismic surveys. It should be noted that there is no jurisprudence stating that seismic surveys are not "prospecting." Thus, it has apparently not been an issue before the Louisiana courts. However, several other states' jurisprudence does include seismic activity within the term "prospecting." See e.g., Meyer v. Berg, 2007 WL 1430226
(E.D.Wis. 2007); Trutec Oil And Gas, Inc. v. Western Atlas Intern.,Inc., 194 S.W.3d 580 (Tex.App. 14 Dist. 2006). Thus, it seems safe to say that the "prospecting" referred to in La.R.S. 8:901 does indeed include seismic operations. Accordingly, under Louisiana law, it is our opinion that such activities are prohibited in a cemetery. It should be noted, however, that as a policy matter, the Louisiana Cemetery Board has taken the position that directional drilling under cemeteries is permissible and is not a violation of La.R.S. 8:901. We would agree with this interpretation.
[8] La.R.S. 19:2(6).
[9] La.R.S. 19:2(7).
[10] La.R.S. 19:2(8)-(10).
[11] La.R.S. 19:2(11).
[12] This is consistent with the common usage of the term "graveyard" as defined by the Oxford English Dictionary. That source simply defines the term as "a burial ground." Oxford English Dictionary (2nd ed. 1989).
[13] The term "cemetery authority" is specifically defined by Title 8 thus:
 any person, firm, corporation, trustee, partnership, association or municipality owning, operating, controlling or managing a cemetery or holding lands within this state for interment purposes.
La.R.S. 8:1(9). This term, as used throughout this opinion, is used as this specifically defined term from Title 8.
[14] In the event that unmarked burials will be disturbed, La.R.S.8:671, et seq., trumps the conflicting portions of this opinion.
[15] This policy position of the LCB is consistent with the Louisiana Supreme Court's appreciation of the term "dedication" with regard to cemetery property in Humphreys, et al. v. Bennett Oil Corp. et al., 197 So. 222 (La. 1940), commenting that,
 the intention to dedicate this plot of ground to use as a cemetery was first unequivocally manifested by Dr. Tomlinson in 1892 when he, with the assistance of others interested, laid off and established its four corners. It was then being used as a burial ground and had been so used for many years prior thereto. It was part of his property, and his marking it off as he did shows clearly that he intended to segregate it from his other property.
 * * * Regardless of the laws and rules relating to the ownership and control of real property, when a plot of ground is set apart for cemetery purposes, and burials are made in the land, the ground changes its character in the minds and feelings of the community.
Id. at 226-227; 229.
[16] The term "marked burials" as used herein, refers generally to human burials that are commemorated with some type of traditional grave marker, such as a headstone. This is contrasted with the burials that either have no identifiable commemoration or have some commemoration that cannot readily be recognized as a burial marker. In addition, this term is used herein to contrast with the human remains covered by the Louisiana Unmarked Burial Sites Preservation Act, La.R.S. 8:671, etseq.
[17] The statement that this should be a matter of last resort is in reference to the requirement of La.R.S. 19:3 that the taking of cemetery property for other purposes under expropriation must be done pursuant to a vital need.
[18] City of New Orleans v. Christ Church Corp., supra.
[19] This is probably appropriate, as the law behind this appointment related to absent persons, which the dead are certainly not under the provisions of La.C.C. Arts. 47—53, particularly because La.C.C. Arts. 54—59
deal specifically with the distinction between dead people and absent people.
[20] This explication is consistent with the change in the law noted in La.C.C. Art. 47, cmt. a. It should be noted, however, that other states have appointed similar curators for "unknown and unrepresented persons who may be interred in" a cemetery. See, Judgment Entry, In Re:The Matter of the Removal of Human Remains from Cemeteries in KansasCity, Platte County, Missouri, Docket No. 07AE-CV00593, Div. I (Cir.Ct. Platte County, Missouri 4/17/08). Accoridingly, the concept is not an antiquated notion, it is just no longer mandatory in Louisiana.
[21] It is also important to note that there are other provisions of the law that may apply to wanton activity in a cemetery. Title 14 provides for criminal sanctions for grave desecration. La.R.S. 14:101. Although we are certainly not suggesting that such is the case in the Knox Cemetery situation (which it clearly is not), we feel that the law should be noted for good measure.
[22] In the further interest of completeness, it should be noted that, should such a cemetery be found to be an archaeological site that is located on State property, there are permitting requirements for any activity that will disturb such areas under Title 41. See, La.R.S.41:1601, et seq.